# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| SC AMERICA, LLC ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | CIVIL ACTION FILE NO. |
| MARCO'S FRANCHISING, LLC, ) | |
| ) | 1:22-cv-00610-RDP |
| Defendant. ) | |
| ) | |

## MARCO'S BRIEF IN SUPPORT OF TRANSFER BASED ON THE MANDATORY FORUM-SELECTION CLAUSE

Pursuant to the Court's May 19, 2022 Order (ECF No. 8), Defendant Marco's Franchising, LLC ("Marco's" or "Defendant") hereby submits this brief in support of its position that this Court should transfer this civil action to the U.S. District Court for the Northern District of Ohio, pursuant to 28 U.S.C. § 1404(a) and as required by the parties' mandatory forum-selection clause.

## RELEVANT FACTUAL BACKGROUND

Marco's operates the MARCO'S PIZZA® franchise system, and on January 25, 2021, Marco's entered into a franchise agreement (the "Franchise Agreement" or "FA")[1] with Plaintiff SC America, LLC ("SCA" or "Plaintiff"), whereby SCA

---

[1] The Franchise Agreement is attached as Exhibit B to the Joint Report (ECF No. 6), filed by the parties in this Court on May 16, 2022.

#122836v3

was to continue operating its MARCO'S PIZZA franchise restaurant (the "Store"), located at 485 US Hwy 431, North Anniston, AL 36206 (the "Premises"), until January 25, 2031. (Compl.[2] ¶¶ 1-3.) The January 25, 2021 Franchise Agreement was the parties' second such agreement, as their franchise relationship dates back to 2011, when SCA entered into its first ten-year franchise agreement with Marco's to operate the Store at the Premises. (Compl. ¶¶ 1-3.)

Relevant here, Section 21.3 of the Franchise Agreement (titled "Jurisdiction and Venue") contains the following mandatory forum-selection clause (hereinafter, the "Forum-Selection Clause"):

> Any disputes which are not subject to mediation or which are not resolved through mediation (as applicable) shall be resolved through litigation, initiated and maintained exclusively in the state and/or federal courts serving the judicial district in which [Marco's] maintains its headquarters (currently, Toledo, Ohio) at the time the action is initiated. [SCA] irrevocably consent[s] to the personal jurisdiction of such courts, and waive[s] all questions of personal jurisdiction and challenges to venue.

The Franchise Agreement also provides, at Section 21.1, that the agreement is to be "exclusively governed by the laws of the State of Ohio," except to the extent governed by the Lanham Act, 15 U.S.C. § 1051 et seq. Both the Forum-Selection Clause and the choice of law provision survive expiration or termination of the

---

[2] SCA's Complaint in this civil action, originally filed in the Circuit Court of Calhoun County, Alabama, is attached as Exhibit 2 to the Notice of Removal Marco's filed in this Court on May 11, 2022 (ECF No. 1-2).

Franchise Agreement, as do other provisions that, by their nature, terms, or intent, "are designed to survive the expiration or termination." (FA §§ 19 & 21.17.13.)

Also relevant here, the Franchise Agreement requires at Section 7.4.5 that— "in order to protect" Marco's "intangible investment" in the Premises "by virtue of [SCA] utilizing [Marco's] business model to open the Store"—SCA must "lease the [P]remises for the Store, using the Marco's Pizza Standard Lease Rider." (*See also* FA § 7.8; Compl. ¶ 4.) That Standard Lease Rider "was made a part of the Disclosure Document that was applicable when the [Franchise Agreement] was signed" (FA § 7.5). Further, the Standard Lease Rider is and was necessary "[i]n order to preserve the goodwill of the [MARCO'S PIZZA® franchise] System following termination" of the Franchise Agreement (FA § 19.6.10).

Specifically, Section 19.6.10 (titled "Right to Enter and Continue Operations") provides Marco's the right to enter the Store following termination "for the purpose [of] continuing the Store's operation and maintaining the goodwill of the business" (hereinafter, Marco's "Step-In Rights"). And the Standard Lease Rider facilitates Marco's Step-In Rights by requiring that SCA, upon termination and at Marco's option, "assign to [Marco's] any interest which [SCA] has in the lease or sublease of the [P]remises which the Store is operated and/or for the building in which the Store is operated." (FA § 19.6.4.) In short, the Standard Lease Rider is the

mechanism by which the landlord for the Premises consents to that lease assignment in the event of termination of the Franchise Agreement.

SCA and its landlord for the Premises, Saks Commercial Properties, LLC, executed the Marco's Pizza Standard Lease Rider, which SCA attached as Exhibit 1 to its Complaint. (ECF No. 1-2, Ex. 1; *see also* Compl. ¶ 5.) Notably, Marco's is not a party to that Standard Lease Rider, as the rider imposes no obligations upon Marco's. Rather, in executing the Standard Lease Rider, SCA (with the consent of its landlord) expressly affirmed one of Marco's remedies under the Franchise Agreement in the event of a premature termination of that agreement—namely, Marco's Step-In Rights. (*See also* Compl. ¶ 7.)

By letter dated March 7, 2022, Marco's notified SCA that the Franchise Agreement had been terminated, effective March 9, 2022 (*see* Compl. ¶ 9); though Marco's allowed SCA to continue operating the Store for a limited period subject to the terms and conditions contained in the limited license agreement (the "Limited License Agreement" or "LLA") that both parties executed on March 8, 2022. (LLA,[3] p. 1.) That Limited License Agreement, in Section VIII (titled "Dispute Resolution, Choice of Law, Jurisdiction and Venue"), expressly incorporates the Forum-Selection Clause of the Franchise Agreement, among other provisions:

> The provisions of the Franchise Agreement regarding dispute resolution, choice of law, venue and jurisdiction are incorporated herein

---
[3] The Limited License Agreement is attached as Exhibit A to the Joint Report.

by reference; provided however that the parties shall not be required to mediate their disputes prior to pursuing any legal action.

## RELEVANT PROCEDURAL BACKGROUND

Notwithstanding the mandatory Forum-Selection Clause of the Franchise Agreement, as expressly incorporated in the Limited License Agreement, SCA filed suit against Marco's on May 6, 2022 in the Circuit Court of Calhoun County, Alabama, seeking declaratory judgment and a temporary restraining order (the "TRO"). The Calhoun County Court entered SCA's TRO the same day, on May 6, even though Marco's had not yet received notice of the Complaint or of SCA's motion for the TRO.[4]

The allegations in SCA's Complaint all stem from the parties' Franchise Agreement, the termination of that agreement, the Limited License Agreement, and Marco's right to exercise its Step-In Rights under the Franchise Agreement following expiration of the Limited License Agreement. (*See* Compl. ¶¶ 1-12.) As a result, Marco's filed the Notice of Removal with this Court on May 11, 2022, and the parties' participated in a status conference with the Court on May 13, 2022, during which they discussed their respective positions on removal and other matters. (ECF No. 5.) The parties subsequently submitted a Joint Report on May 16, 2022, wherein they provided their respective positions with respect to: (a) removal and the

---

[4] In fact, to date, Marco's has still not even been served with the Complaint.

Court's subject matter jurisdiction; (b) dismissal or transfer based on the Forum-Selection Clause; (c) SCA's request for preliminary injunctive relief; and (d) various other matters.

On May 19, 2022, the Court issued a Memorandum Opinion (ECF No. 7) and Order (ECF No. 8), wherein it concluded *sua sponte* that it had subject matter jurisdiction over the case on the basis of diversity jurisdiction, and that, therefore, removal is proper. The Court further ordered the parties to file simultaneous briefing, by May 27, 2022, regarding the proper venue for this case and any other issues that the parties wish the court to consider.

Marco's submits this brief pursuant to that Order.

**ARGUMENT AND CITATION OF AUTHORITY**

The Eleventh Circuit has held that mandatory forum-selection clauses are "presumptively valid and enforceable" absent a "strong showing that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (internal quotation omitted); *cf. Alexander Proudfoot Co. World Headquarters v. Thayer*, 877 F,2d 912, 921 (11th Cir. 1989) ("Quite simply, parties to a contract may agree in advance to submit to the jurisdiction of a given court.") (internal quotation omitted). As explained by the United States Supreme Court in *Atlantic Marine*, 28 U.S.C. § 1404(a)—which provides for transfer of a civil action "[f]or the convenience of the parties and

witnesses, in the interest of justice"—is the "mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atl. Marine Contr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 59 (2013). And a "proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Id.* at 60 (internal quotation omitted).

"The validity of a forum selection clause is determined under the usual rules governing the enforcement of contracts in general." *P & S Bus Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003). And under those rules, a forum selection clause is valid and enforceable if it was "freely and fairly negotiated by experienced business professionals," without fraud, duress, misrepresentation or other misconduct with respect to the agreement to the forum-selection clause. *In re Ricoh Corp.*, 870 F.2d 570, 573-74 (11th Cir. 1989). "Accordingly, the validity of a forum-selection clause must first be determined under general contract law, and, second, where a contractually valid forum-selection clause exists, the extremely high bar of *Atlantic Marine* applies to the question of whether that clause is enforceable." *Guest Assocs., Inc. v. Cyclone Aviation Prod., Ltd.*, 30 F. Supp. 3d 1278, 1282 (N.D. Ala. 2014).

Here, SCA does not allege in its Complaint nor argue in the Joint Report that the Forum-Selection Clause is in any way invalid; indeed, SCA concedes that the clause is "mandatory." (Joint Report at 8.) SCA instead argues in the Joint Report

7
#122836v3

that the Forum-Selection Clause is "inapplicable here as [there] is no such provision in the lease rider which Plaintiff believe[s] is the operative document in the case at bar." (*Id.*) Stated differently, SCA contends that the lease rider is a

> separate document and is the only document that the Defendant relies on to justify its intended action which were complained of in the Plaintiffs initial complaint, i.e., the intention by Defendant Marcos Franchising to take hold of the lease space of the Plaintiffs.

*Id.* This is simply not the case.

The "intended action which were complained of" in the Complaint is Marco's right to exercise its Step-In Rights under the Franchise Agreement. The Standard Lease Rider simply facilitates Marco's right to exercise of those Step-In Rights, as it is the mechanism by which the landlord for the Premises consents to SCA's assignment of its lease for the Premises to Marco's, upon termination and at Marco's option, as provided in Section 19.6.4 of the Franchise Agreement.

Thus, the Standard Lease Rider is not a document that is *separate from* the Franchise Agreement or the parties' franchise relationship more generally. Rather, that lease rider is repeatedly referenced and incorporated in the Franchise Agreement, "was made a part of the Disclosure Document that was applicable when the [Franchise Agreement] was signed" (FA § 7.5), and it is necessary "[i]n order to preserve the goodwill of the [MARCO'S PIZZA® franchise] System following termination" of the Franchise Agreement (FA § 19.6.10).

Notably, the "separate document" that SCA contends is the only operative document in the case at bar, the Standard Lease Rider, is a document that Marco's is not even a party to, as it imposes no obligations upon Marco's. Rather, in executing the Standard Lease Rider, SCA (with the consent of its landlord) expressly affirmed one of Marco's remedies *under the Franchise Agreement* in the event of a premature termination of that agreement—namely, Marco's Step-In Rights.

But, assuming *arguendo* that the Standard Lease Rider is in fact a document separate from the Franchise Agreement (and the Limited License Agreement) and the "only document that the Defendant relies on to justify" its right to exercise its Step-In Rights, the broad language of the mandatory Forum-Selection Clause would nevertheless still require SCA to bring this action in Ohio. Specifically, the Forum-Selection Clause applies to "Any disputes" between the parties; it is *not* limited only to disputes concerning the Franchise Agreement specifically, or even to disputes concerning the parties' franchise relationship more broadly.

Accordingly, the Forum-Selection Clause in the Franchise Agreement, as expressly incorporated in the Limited License Agreement, is both valid and applicable to this civil action. And as SCA is "the party defying the forum-selection clause," it is SCA that "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine Const. Co.*, 571 U.S. at 63.

In considering whether SCA has met this burden, this Court "should afford no weight to the plaintiff's selected forum or the parties' private interests." *Dailey v. Berkowitz*, No. 2:19-CV-352-GMB, 2020 WL 109461, at *3 (N.D. Ala. Jan. 9, 2020) (citing *Hisey v. Qualtek USA, LLC*, 753 F. App'x 698, 703 (11th Cir. 2018)). This is because "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of litigation." *Atl. Marine Const. Co.*, 571 U.S. at 64. Thus, "a district court may consider arguments about public-interest factors only." *Id.* These public-interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Guest Assocs., Inc.*, 30 F. Supp. 3d at 1283; *see also U.S. ex rel. MDI Servs., LLC v. Fed. Ins. Co.*, No. 5:13-CV-2355-AKK, 2014 WL 1576975, at *2 (N.D. Ala. Apr. 17, 2014) (explaining that "a valid forum-selection clause alters the court's § 1404(a) analysis" by "effectively limiting the court's consideration to arguments about public-interest factors").

None of these public-interest factors warrant a finding that this case is one of those rare "exceptional cases" in which a valid forum-selection clause should not be given controlling weight. Indeed, the parties' chosen forum (Ohio) and choice of law (Ohio) are the same. *See, e.g., Daily*, 2020 WL 109461 at *4 ("The interest in having

the trial of a diversity case in a forum that is at home with the law weights in favor of transfer since the parties have entered into a choice of law provision requiring the courts to apply Florida law.").

## CONCLUSION

For the foregoing reasons, Marco's respectfully requests that the Court transfer this civil action to the U.S. District Court for the Northern District of Ohio, pursuant to 28 U.S.C. § 1404(a) and as required by the parties' mandatory forum-selection clause.

Respectfully submitted this 27th day of May, 2022.

        CAIOLA & ROSE, LLC

        /s/ *Anne P. Caiola*
        Annie P. Caiola
        Georgia Bar No. 142639
        *Admitted Pro Hac Vice*

        125 Clairemont Avenue
        Suite 240
        Decatur, GA 30030
        470-300-1020 phone
        470-819-3758 fax
        annie@caiolarose.com


        GORDON REES SCULLY
        MANSUKHANI, LLP

        Leslie K. Eason (ASB-3405-l62w)
        Jeremy W. Richter (RIC098)
        420 20th Street North – Suite 2200
        Birmingham, AL 35203

leason@grsm.com
jricther@gsrm.com
Phone: (205) 980-8200
Fax: (205) 383-2816

*Attorneys for Defendant Marco's Franchising, LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the Court's Electronic Filing System, which will automatically send notification of such filing to all counsel of record registered with the Court's Electronic Filing System, as noted below.

>Edward E. May, II
>420 20th Street North, Suite 2260
>Birmingham, AL 35203
>*Counsel for Plaintiff*

This 27th day of May, 2022.

_____
COUNSEL